IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ……………………………………………….. | X | |
| HOMELAND INSURANCE COMPANY OF DELAWARE, | : | |
| | : | Case No.: |
| | : | 1:25-cv-00864-JPC |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DEBORAH O'HARA-RUSCKOWSKI, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| ……………………………………………….. | X | |

**AMENDED COMPLAINT**

Homeland Insurance Company of Delaware ("Homeland"), by and through its undersigned counsel, brings this Amended Complaint against Defendant Deborah O'Hara-Rusckowski ("O'Hara-Rusckowski") and alleges as follows:

**THE NATURE OF THIS ACTION**

1. Homeland brings this action pursuant to 28 U.S.C. § 2201 seeking a declaration that it has no duty to defend or indemnify O'Hara-Rusckowski in connection with an underlying lawsuit entitled *Avodah Farms, et al. v. Deborah O'Hara Rusckowski*, Civil Action No. 1:24-cv-233 pending in the United States District Court for the District of Colorado (the "Underlying Action").

2. Homeland issued a directors and officers insurance policy to a non-party named insured called the Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta, American Association, U.S.A., effective from

October 9, 2023 to October 9, 2024 bearing Policy Number MML-32018-23 (the "Homeland Policy").

3. O'Hara-Rusckowski is or has been an employee, executive, director, and/or officer of the named insured or its affiliates.

4. The Underlying Action alleges claims against O'Hara-Rusckowski for defamation, intentional interference with contract, intentional interference with prospective business relations, and extreme and outrageous conduct.

5. The Underlying Action alleges that the acts forming the basis for these claims occurred while O'Hara-Rusckowski was acting in her personal capacity or in her capacity as a representative of organizations that are not insured under the Homeland Policy.

6. O'Hara-Rusckowski nevertheless sought a defense and indemnification under the Homeland Policy for the claims asserted against her in the Underlying Action.

7. Homeland is currently defending O'Hara-Rusckowski in the Underlying Action under a reservation of rights, including the right to file a declaratory judgment action seeking adjudication of Homeland's coverage obligations.

8. Homeland seeks a judgment declaring that it has no duty to defend or indemnify O'Hara-Rusckowski in connection with the Underlying Action.

<h2 style="text-align:center">THE PARTIES, JURISDICTION, AND VENUE</h2>

9. Homeland is a Delaware corporation with its principal place of business in Minnesota.

10. O'Hara-Rusckowski is a citizen of Massachusetts.

11. The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

12. This Court has personal jurisdiction over O'Hara-Rusckowski because she owns, uses, or maintains property within the State of New York, and because she claims to be insured under the Homeland Policy, which was issued to a named insured located New York, New York.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because the defendant is subject to personal jurisdiction in this District.

<h2 style="text-align:center">THE UNDERLYING ACTION</h2>

14. On January 25, 2024, Avodah Farms and its Executive Director, Keenan Fitzpatrick ("Fitzpatrick"), filed the Underlying Action against O'Hara-Rusckowski as well as against several organizational defendants: the Order of Malta, American Association, U.S.A.; Order of Malta, Western Association, U.S.A.; and Order of Malta Worldwide Relief Malteser International Americas, Inc. (the organizational defendants are referred to collectively as the "Order of Malta Defendants").

15. The original complaint in the Underlying Action ("Underlying Complaint") alleged that O'Hara-Ruskowski was a member of the Malta Board of Councilors, a Delegate, Permanent Observer for Malta at the United Nations, Board

3

Member of Malteser, and acted on behalf of the Order of Malta Defendants. A true and accurate copy of the Underlying Complaint is attached as Exhibit 1.

16. According to the Underlying Complaint, Avodah Farms was formed in 2020 to support survivors of sex trafficking. In 2021, O'Hara-Rusckowski allegedly connected Avodah Farms with sellers of a property in Massachusetts called Lowell Home, which Avodah Farms bought in 2022.

17. The Underlying Complaint alleged that one of the Malta Defendants donated a total of $500,000 in funds to support four religious Sisters to work at Lowell Home. The Malta Defendants allegedly arranged for another organization to donate additional funds for improvements to the Lowell Home.

18. The Underlying Complaint further alleged that in November 2022, O'Hara-Rusckowski and members of the Malta Defendants met with Fitzpatrick and forced him to transfer rights to the Lowell Home to the Malta Defendants, along with unused donated funds.

19. The Underlying Complaint further alleged that, after this meeting, O'Hara-Rusckowski defamed Avodah Farms, saying it was "stealing" and "misappropriating" donor funds, and "labor trafficking" religious Sisters. These statements were purportedly made orally or in writing to the Archdiocese of Denver in late 2023.

20. The Underlying Complaint alleges that the Archdiocese of Denver then published these statements to potential Avodah Farms donors and partner organizations and allegedly caused law enforcement to remove several Sisters from

Avodah Farms' property in Denver. The Archdiocese of Denver also purportedly disavowed Avodah Farms as a Catholic organization, causing significant alleged losses.

21.    According to the Underlying Complaint, in February 2023, O'Hara-Rusckowski relayed the above defamatory statements to an influential Catholic leader who is alleged to have written to other third parties that Fitzpatrick "scammed our good friends out of 500k and is ironically and sadly trafficking religious sisters."

22.    The Underlying Complaint further alleges that O'Hara-Rusckowski made other alleged defamatory statements to other third-parties orally and via text messages in early 2023.

23.    Avodah Farms alleged in the Underlying Complaint that it has suffered millions of dollars in damages and asserted claims for defamation, negligence, tortious interference with contract, tortious interference with prospective business relations, and extreme and outrageous conduct.

24.    On July 10, 2024, Avodah Farms and Fitzpatrick filed an Amended Complaint ("Underlying Amended Complaint") that removed all of the organizational Order of Malta Defendants as parties to the Underlying Action. A true and correct copy of the Underlying Amended Complaint is attached as Exhibit 2, and a true and correct copy of a redlined document filed in the Underlying Action showing the changes made between the original and amended complaints is attached as Exhibit 3.

25. The Underlying Amended Complaint was filed following the organizational Order of Malta defendants entering into a settlement that resulted in the dismissal of claims against them.

26. The Underlying Amended Complaint no longer names O'Hara-Rusckowski "in a representative capacity" for the Order of Malta Defendants, but names her only as "an individual[.]"

27. In contrast with the original Underlying Complaint, the Underlying Amended Complaint alleges that O'Hara-Rusckowski acted "with personal and business incentive" to tarnish the reputation of plaintiffs Avodah Farms and Fitzpatrick.

28. The Underlying Amended Complaint adds the allegation that O'Hara-Rusckowski is the founder of Global Strategic Operatives ("GSO"), an entity unaffiliated with the Order of Malta Defendants that provides training in the identification of potential trafficking victims.

29. The Underlying Amended Complaint realleges that, in November 2022, O'Hara-Rusckowski forced Fitzpatrick to transfer contractual rights of the Lowell Home to O'Hara-Rusckowski and to agree that the Sisters would be managed by O'Hara Rusckowski.

30. The Underlying Amended Complaint alleges that Avodah Farms and Fitzpatrick transferred the contractual rights to O'Hara-Rusckowski and also transferred supervision of the religious Sisters to a new management entity of the Lowell Home established by O'Hara-Rusckowski.

31. O'Hara-Rusckowski then allegedly converted the Lowell Home into The O'Connell House and named herself the Founder. The website for The O'Connell House allegedly stated "GSO has trained & hired Religious Sisters as 'care providers,' to provide a loving, nurturing presence in the home for the victims' rehabilitation."

32. The Underlying Amended Complaint realleges the original Underlying Complaint's allegations regarding statements O'Hara-Rusckowski allegedly made to partners and donors, and contains counts for defamation, intentional interference with contract, intentional interference with prospective business relations, and extreme and outrageous conduct.

33. Homeland is currently providing a defense to O'Hara-Rusckowski in the Underlying Action under a reservation of rights, including a reservation of its right to file a declaratory judgment action seeking adjudication of its coverage obligations with respect to the Underlying Action.

## THE HOMELAND POLICY

34. The Homeland Policy includes Liability Coverage sections for Directors, Officers & Organization Liability ("D&O Section") and Employment Practices Liability. A true and correct copy of the Policy is attached as Exhibit 4.

35. The D&O Section states that Homeland "will pay, on behalf of an **Insured Person**, **Loss** for which an **Insured Person** is not indemnified by the **Organization** from any **Claim** first made against an **Insured Person** during the **Policy Period** or applicable Extended Reporting Period for a **Wrongful Act**;

7

provided, that such **Claim** is reported to the Underwriter in accordance with Section VII of this Coverage Section."[1]

36.     With regard to **Insured Persons**, Insuring Agreement (B) of the D&O Section states that Homeland "will pay, on behalf of the **Organization**, **Loss** for which the **Organization** grants indemnification to an **Insured Person**, as permitted or required by law, from any **Claim** first made against an **Insured Person** during the **Policy Period** or applicable Extended Reporting Period for a **Wrongful Act**; provided, that such Claim is reported to the Underwriter in accordance with Section VII of this Coverage Section."

37.     The definition of **Claim** in Section II(C)(1)(b) of the D&O Section includes "a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief commenced by: (i) the service of a complaint or similar pleading . . . against an **Insured** for a **Wrongful Act**[.]"

38.     Wrongful Act is defined at Section II(AA) of the D&O Section:

"**Wrongful Act**" means:

(1)     any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by any **Insured Person** in his or her capacity as such, or any matter asserted against any **Insured Person** solely by reason of his or her status as such;

(2)     for the purposes of Insuring Agreement (C) of this Coverage Section, any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the **Organization**;

---

[1] Bolded terms appear in the policy text as such and are defined in the Homeland Policy.

(3) any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by any **Executive** in his or her **Outside Capacity**; or

(4) with respect to **Insured Persons** and the **Organization**, and subject to paragraphs (1), (2) and (3) above, any actual or alleged:

(a) **Antitrust Violation**;

(b) **Personal Injury Wrongful Act**; and

(c) **Publisher Liability Wrongful Act**.

39. The Homeland Policy defines "**Insured Person**" as a natural person who was, now is or becomes . . . an **Executive** or **Employee**."

40. Section III(I) of the D&O Section states that no coverage will be available for **Loss** from any **Claim** "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** of any **Insured Person** serving in any capacity, other than as an **Executive** or **Employee** or in an **Outside Capacity**[.]"

41. In addition, Section III(K) of the D&O Section states that no coverage will be available for **Loss** from any **Claim**:

made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

(1) such **Insured** having gained any profit, remuneration or advantage to which such **Insured** is not legally entitled; or

(2) the committing of any deliberately fraudulent or dishonest act or omission, or any willful violation of any statute, rule or law, by such **Insured**;

provided, that this EXCLUSION (K) shall not apply unless the gaining by such **Insured** of such profit, remuneration or advantage to which

9

such **Insured** is not legally entitled, or the deliberately fraudulent or dishonest act or omission or willful violation of statute, rule or law, has been established by a final and non-appealable adjudication in any judicial or administrative proceeding other than an action or proceeding commenced by the Underwriter to determine coverage under this Policy[.]

### FIRST CAUSE OF ACTION
### (Declaratory Judgment – No Claim Alleging
### Wrongful Acts In An Allegedly Insured Capacity)

42.     Homeland incorporates by reference paragraphs 1 through 41 of its Amended Complaint as if they are fully set forth herein.

43.     Homeland seeks a judicial declaration regarding its and O'Hara-Rusckowski's rights and obligations, if any, under the Homeland Policy with respect to Underlying Action.

44.     The Homeland Policy provides coverage for **Claims** alleging **Wrongful Acts** only when such acts involve conduct by an **Insured Person** "in his or her capacity as such" or "solely by reason of his or her status as such[.]"

45.     The Homeland Policy excludes coverage for any **Claim** "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** of any **Insured Person** serving in any capacity, other than as an **Executive** or **Employee** or in an **Outside Capacity**[.]"

46.     The Amended Complaint in the Underlying Action alleges that O'Hara-Rusckowski acted in her personal capacity and in her capacity with GSO, which is not a covered **Organization** under the Homeland Policy.

47.     The Amended Complaint, therefore, involves only a **Claim** resulting from, in consequence of, or involving alleged **Wrongful Acts** of O'Hara-Rusckowski

10

serving in capacities that do not involve her role as an **Executive** or **Employee** of any insured **Organization**, and do not involve her acting in an **Outside Capacity**.

48.     Homeland respectfully submits that it is entitled to a judicial declaration that it has no duty to defend or indemnify O'Hara-Rusckowski for any matters alleged in the Underlying Action.

49.     An actual and justiciable controversy currently exists pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties with respect to the Underlying Action and the Homeland Policy and to grant such relief as it deems necessary and proper.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment – No Claim Alleging Wrongful Acts Within the Scope of Capacity With An Allegedly Insured Organization)**

50.     Homeland incorporates by reference paragraphs 1 through 49 of its Amended Complaint as if they are fully set forth herein.

51.     Homeland seeks a judicial declaration regarding its and O'Hara-Rusckowski's rights and obligations, if any, under the Homeland Policy with respect to Underlying Action.

52.     The Homeland Policy provides coverage for **Claims** alleging **Wrongful Acts** only when such acts involve conduct by an **Insured Person** "in his or her capacity as such" or "solely by reason of his or her status as such[.]"

53.     The Homeland Policy excludes coverage for any **Claim** "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way

11

involving any **Wrongful Act** of any **Insured Person** serving in any capacity, other than as an **Executive** or **Employee** or in an **Outside Capacity**[.]"

54. The Amended Complaint in the Underlying Action accuses O'Hara-Rusckowski of defamation, intentional interference with contract, intentional interference with prospective business relations, and extreme and outrageous conduct, none of which are the result of acts that were or could have been performed in her capacity with a covered **Organization** under the Homeland Policy.

55. The Amended Complaint, therefore, involves only a **Claim** resulting from, in consequence of, or involving alleged **Wrongful Acts** of O'Hara-Rusckowski that were outside of the scope of any role she may have held as an **Executive** or **Employee** of any insured **Organization**, and do not involve her acting in an **Outside Capacity**.

56. Homeland respectfully submits that it is entitled to a judicial declaration that it has no duty to defend or indemnify O'Hara-Rusckowski for any matters alleged in the Underlying Action.

57. An actual and justiciable controversy currently exists pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties with respect to the Underlying Action and the Homeland Policy and to grant such relief as it deems necessary and proper.

**THIRD CAUSE OF ACTION**
**(Declaratory Judgment – Exclusion (K))**

58.    Homeland incorporates by reference paragraphs 1 through 57 of its Amended Complaint as if they are fully set forth herein.

59.    Section III(K) of the D&O Section states that no coverage will be available for **Loss** from any **Claim**:

> made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:
>
> (1)    such **Insured** having gained any profit, remuneration or advantage to which such **Insured** is not legally entitled; or
>
> (2)    the committing of any deliberately fraudulent or dishonest act or omission, or any willful violation of any statute, rule or law, by such **Insured**;
>
> provided, that this EXCLUSION (K) shall not apply unless the gaining by such **Insured** of such profit, remuneration or advantage to which such **Insured** is not legally entitled, or the deliberately fraudulent or dishonest act or omission or willful violation of statute, rule or law, has been established by a final and non-appealable adjudication in any judicial or administrative proceeding other than an action or proceeding commenced by the Underwriter to determine coverage under this Policy[.]

60.    The Underlying Action alleges that O'Hara Rusckowski acted with personal interest and accuses her of defamation, intentional interference with contract, intentional interference with prospective business relations, and extreme and outrageous conduct.

61.    To the extent any final and non-appealable adjudication in the Underlying Action or any judicial or administrative proceeding other than this lawsuit establishes that O'Hara-Rusckowski gained a profit, remuneration, or advantage to which she was not entitled; committed deliberately fraudulent or dishonest acts or omissions; or willfully violated a statute, rule, or law; then

13

Homeland is entitled to a declaratory judgment that Exclusion K of the Homeland Policy precludes coverage for the Underlying Action.

62. To the extent any final and non-appealable adjudication in the Underlying Action or any judicial or administrative proceeding other than this lawsuit establishes that O'Hara-Rusckowski gained a profit, remuneration, or advantage to which she was not entitled; committed deliberately fraudulent or dishonest acts or omissions; or willfully violated a statute, rule, or law; then Homeland is entitled to a declaratory judgment that it may recoup any and all payments it made in connection with defending O'Hara-Rusckowski under a reservation of rights.

63. By letter dated November 13, 2024, Homeland expressly reserved its rights to recoup all payments made by Homeland in connection with the defense of O'Hara-Rusckowski, including in the event that a final and non-appealable adjudication establishes that she gained a profit, remuneration, or advantage to which she was not entitled. A true and correct copy of Homeland's November 13, 2024, letter is attached as Exhibit 5.

64. O'Hara-Rusckowski did not object to the conditions upon which Homeland offered to provide a defense subject to reservation of rights, including the right to recoup costs Homeland has expended to fund O'Hara-Rusckowski's defense of the Underlying Action.

65. An actual and justiciable controversy currently exists pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested

with the power to declare the rights and liabilities of the parties with respect to the Underlying Action and the Homeland Policy and to grant such relief as it deems necessary and proper.

## FOURTH CAUSE OF ACTION
### (Recoupment of Defense Costs)

66. Homeland incorporates by reference paragraphs 1-65 of its Amended Complaint as if they are fully set forth herein.

67. By letter dated November 13, 2024, Homeland agreed to fund O'Hara-Rusckowski's defense subject to a reservation of rights, including reservation of its rights to file a declaratory judgment action seeking a determination that it had no duty to defend the Underlying Action and, in the event of such a determination, a right to recoup amounts Homeland paid toward O'Hara-Rusckowski's defense of the Underlying Action. *See* Exhibit 5.

68. O'Hara-Rusckowski did not object or refuse to consent to the conditions upon which Homeland agreed to provide a defense under a reservation of rights.

69. In the event that this Court declares that Homeland has no duty to defend the Underlying Action, then Homeland is entitled under applicable law to an award of damages reimbursing it for all amounts Homeland has paid toward O'Hara-Rusckowski's defense of the Underlying Action.

## PRAYER FOR RELIEF

WHEREFORE, Homeland prays that the Court enter a judgment in its favor and against O'Hara-Rusckowski as follows:

15

a)  declaring that Homeland has no duty to defend or indemnify O'Hara-Rusckowski in the Underlying Action because the Underlying Action does not allege **Wrongful Acts** committed in her capacity as an **Insured Person** or in any **Outside Capacity** as defined by the Homeland Policy;

b)  declaring that Homeland has no duty to defend or indemnify O'Hara-Rusckowski in the Underlying Action because the Underlying Action does not allege **Wrongful Acts** committed within the scope of any role she may have held as an Executive or Employee of any insured **Organization**, and do not involve her acting in an **Outside Capacity**;

c)  In the event any final and non-appealable adjudication in the Underlying Action or any judicial or administrative proceeding other than this lawsuit establishes that O'Hara-Rusckowski gained a profit, remuneration, or advantage to which she was not entitled, committed deliberately fraudulent or dishonest acts or omissions, or willfully violated a statute, rule, or law, declaring that Exclusion K of the Homeland Policy precludes coverage for the Underlying Action;

d)  In the event any final and non-appealable adjudication in the Underlying Action or any judicial or administrative proceeding other than this lawsuit establishes that O'Hara-Rusckowski gained a profit, remuneration, or advantage to which she was not entitled; committed deliberately fraudulent or dishonest acts or omissions; or willfully

16

violated a statute, rule, or law; declaring that Homeland may recoup any and all payments it made in connection with defending O'Hara-Rusckowski under a reservation of rights in the Underlying Action;;

e) In the event this Court declares that Homeland had no duty to defend the Underlying Action, awarding damages to Homeland representing reimbursement and/or recoupment of any and all amounts Homeland has paid toward O'Hara-Rusckowski's defense of the Underlying Action; and

f) awarding all other just and proper relief.

Dated:  New York, New York
      January 9, 2026

_____/s/_____
Alexander W. Cogbill
acogbill@zellelaw.com
ZELLE LLP
45 Broadway, Suite 920
New York, NY 10006
Tel: 646-876-4420


_____/s/_____
Christian P. Jones (*pro hac vice*)
cjones@intactinsurance.com
Sara L. Menton (*pro hac vice*)
smenton@intactinsurance.com
INTACT U.S. COVERAGE
LITIGATION GROUP
605 Highway 169 North, Suite 800
Plymouth, MN 55441
Tel: 781-332-7201

Attorneys for Plaintiff Homeland
Insurance Company of Delaware

## CERTIFICATE OF SERVICE

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on January 9, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record via ECF.

/s/

_____
Alexander W. Cogbill, Esq.
