UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOMELAND INSURANCE COMPANY OF DELAWARE,

Plaintiff,

-v-

DEBORAH O'HARA-RUSCKOWSKI,

Defendant.

25 Civ. 864 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

This insurance coverage dispute arises out of a separate lawsuit pending in the District of Colorado (the "Colorado Litigation"). In that case, Avodah Farms ("Avodah"), a nonprofit that provides long-term care to survivors of sex trafficking, and its Executive Director, Keenan Fitzpatrick, allege that their former business partner, Defendant Deborah O'Hara-Rusckowski, defamed them to prominent figures in the faith-based and charitable communities. O'Hara-Rusckowski is being defended in that Colorado Litigation, under a reservation of rights, by Plaintiff Homeland Insurance Company of Delaware ("Homeland"), which had issued a directors and officers liability policy to an organization on whose board O'Hara-Rusckowski once served. Now, in this action, Homeland seeks declarations under the Declaratory Judgment Act, 28 U.S.C. § 2201, that it has no duty to defend or to indemnify O'Hara-Rusckowski. In Homeland's view, the Colorado Litigation accuses O'Hara-Rusckowski of acting only in her personal capacity, which falls outside the policy's coverage. Homeland therefore seeks to stop defending O'Hara-Rusckowski and recoup the defense costs it has already paid.

After an initial period of limited discovery, the parties have cross-moved for partial summary judgment. O'Hara-Rusckowski contends that the Court should decline to issue a

declaratory judgment regarding Homeland's duty to defend because doing so would require the Court to decide a question—whether she acted in an official capacity—which also will need to be litigated in the Colorado action. Homeland responds that this Court should not speculate about what issues will be decided in the Colorado Litigation, and that no plausible outcome in Colorado could require it to indemnify O'Hara-Rusckowski.

The Court agrees with O'Hara-Rusckowski. The duty-to-defend declaration that Homeland seeks would require this Court to resolve questions that the District of Colorado is positioned to decide. Because that court is the more appropriate and efficient forum for the resolution of these questions, this Court exercises its discretion to decline to issue a declaratory judgment on Homeland's duty to defend O'Hara-Rusckowski. Additionally, because the Court declines to declare that Homeland has no duty to defend O'Hara-Rusckowski, Homeland's related request for a declaration regarding its duty to indemnify is dismissed as unripe, since any such indemnification obligation depends on contingent future events in the Colorado Litigation which are impossible to predict with certainty. The Court therefore denies Homeland's motion for partial summary judgment and grants partial summary judgment to O'Hara-Rusckowski on terms described herein.

# I. Background[1]

## A. The Colorado Litigation

On January 25, 2024, Avodah and Fitzpatrick (collectively, the "Avodah Plaintiffs") commenced the Colorado Litigation in the United States District Court for the District of Colorado against O'Hara-Rusckowski and three related entities: Order of Malta, American Association, U.S.A. (the "Order of Malta"); Order of Malta, Western Association, U.S.A.; and Order of Malta Worldwide Relief Malteser International Americas, Inc. (collectively, the "Malta Defendants"). *See Avodah Farms v. O'Hara-Rusckowski*, No. 24 Civ. 233 (NYW) (CYC) (D. Colo.) ("D. Colo. Case"), Dkt. 1; Deft. 56.1 Stmt. ¶¶ 10-11. The original complaint in that litigation alleged that O'Hara-Rusckowski "was a member of the Malta Board of Councillors, a Delegate, Permanent Observer for Malta at the United Nations, and Board Member of Malteser," Dkt. 40-1 ("D. Colo. Orig. Compl.") ¶ 9, that she "acted both individually and in a representative capacity on behalf of the Malta Defendants," *id.* ¶ 10, and that the Malta Defendants, "through Rusckowski, partnered with and/or ventured with Avodah" to further Avodah's mission, *id.* ¶ 20. The complaint asserted

[1] The following facts are drawn from the parties' statements and counterstatements of undisputed material facts submitted pursuant to Local Civil Rule 56.1, Dkt. 52 ("Deft. 56.1 Stmt."); Dkt. 62 ¶¶ 1-28 ("Pl. 56.1 Counter Stmt."); Dkt. 62 ¶¶ 29-34 (Plaintiff's Rule 56.1 statement); Dkt. 68 (O'Hara Rusckowski's Rule 56.1 counter statement), the Declaration of Christopher R. Mosley and its attached exhibits, Dkt. 54 ("Mosley Decl."), and certain filings in the Colorado Litigation, of which the Court takes judicial notice. The Court takes judicial notice of filings in the Colorado Litigation "not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). Thus, in recounting the allegations against O'Hara-Rusckowski in the Colorado Litigation, the Court describes only what the plaintiffs there allege, and expresses no view on the truth of those allegations. In addition, the Court cites only to a party's statement of undisputed material facts when the opposing party does not dispute the fact, has not offered admissible evidence to refute it, or merely seeks to add its own "spin" on the fact or otherwise disputes the inferences drawn from it.

claims sounding in defamation and tortious interference based on statements O'Hara-Rusckowski allegedly made about the Avodah Plaintiffs. *See, e.g.*, *id.* ¶¶ 39-49.

Homeland's involvement in the Colorado Litigation stems from a directors and officers liability insurance policy, Policy Number MML-32018-23, that it issued to the Order of Malta for the period of October 9, 2023 to October 9, 2024. *See* Pl. 56.1 Counter Stmt. ¶ 1; Dkt. 40-4 (the "Policy"). The Policy's "Directors, Officers & Organization Liability Coverage Section" obligates Homeland to pay, on behalf of an "Insured Person," any covered "Loss" from any "Claim" first made during the policy period for a "Wrongful Act." Policy at 27;[2] Deft. 56.1 Stmt. ¶¶ 3-4. An "Insured Person" includes "any natural person who was, now is or becomes . . . an Executive or Employee" of the insured organization. Policy at 31; Defts. 56.1 Stmt. ¶ 5. The Policy excludes, however, coverage for loss from any claim "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any Wrongful Act of any Insured Person serving in any capacity, other than as an Executive or Employee or in an Outside Capacity." Policy at 36 (emphasis removed). It is undisputed that O'Hara-Rusckowski—a former Order of Malta board member—qualified as "an Executive or Employee" of the Order of Malta. *See* Defts. 56.1 Stmt. ¶ 8. Pursuant to the Policy, Homeland provided a defense in the Colorado Litigation to both O'Hara-Rusckowski and the Malta Defendants. *Id.* ¶¶ 13-14.

The claims against the Malta Defendants did not last long, however. In early 2024, the Avodah Plaintiffs voluntarily dismissed their claims against the two defendant entities other than the Order of Malta, D. Colo. Case, Dkts. 14, 18 (notices of voluntary dismissal); *see* D. Colo Case, Dkt. 23 (order confirming dismissals), and on June 19, 2024, they also executed a "Full and Final Release" with the Order of Malta, Mosley Decl., Exh. B ("Settlement Agreement"). In Paragraph

[2] Because the page numbering of the Policy restarts throughout, citations in this Opinion and Order to the Policy are to the ECF-generated page numbers.

1 of the Settlement Agreement, the Avodah Plaintiffs released the "Order of Malta, its principals, employees, members, attorneys, successors, executive director(s), board members and officers (collectively referred to as 'Releasees')" from "any and all liabilities, claims, demands, rights, controversies, . . . [and] causes of action . . . which might exist with regard to the subject incidents which gave rise to this claim." *Id.* ¶ 1. Paragraph 2, however, "explicitly excepts from paragraph 1 above Defendant Deborah O'Hara Rusckowski" and provides that the agreement "does not waive any claims which Plaintiffs may have against Defendant Deborah O'Hara-Rusckowski, individually," as well as "any claims against any insurers that may have a duty to defend or indemnify Deborah O'Hara Rusckowski." *Id.* ¶ 2. Based on this agreement, on July 9, 2024, the District of Colorado dismissed the Avodah Plaintiffs' claims against the Order of Malta with prejudice. D. Colo. Case, Dkt. 71.

The next day, the Avodah Plaintiffs filed an Amended Complaint in the Colorado Litigation (the "Colorado Amended Complaint") naming O'Hara-Rusckowski, "an individual," as the sole defendant. D. Colo. Case, Dkt. 72 ("D. Colo. Am. Compl.") ¶ 5; *accord* Dkt. 40-2 ¶ 5. That Amended Complaint rests on the same alleged course of conduct as the original pleading, but it removes allegations that O'Hara-Rusckowski acted in a representative capacity on behalf of the Malta Defendants and adds allegations that she acted for her own personal and business benefit. *Compare* D. Colo. Orig. Compl. ¶¶ 10, 20, *with* D. Colo. Am. Compl. ¶¶ 35-40, 138, 145. The Avodah Plaintiffs continue to allege, however, that "[d]uring the relevant times giving rise to this action," O'Hara-Rusckowski was a member of the Order of Malta's Board of Councillors, a Delegate and Special Advisor on Human Trafficking to the Ambassador for the Order of Malta at the United Nations, and a board member of Malteser International. D. Colo. Am. Compl. ¶ 6. The Colorado Amended Complaint also newly alleges that O'Hara-Rusckowski is the founder of Global

Strategic Operatives ("GSO"), an entity unaffiliated with the Order of Malta that provides training in the identification of trafficking victims. *Id.* ¶¶ 7, 36-37.

According to the Colorado Amended Complaint, Avodah, Fitzpatrick, and O'Hara-Rusckowski entered into a partnership beginning in 2021 to develop a survivor safe home in Lowell, Massachusetts (the "Lowell Home") where they would implement Avodah's "Sister Care" model, by which religious sisters live in residence and provide long-term care to trafficking survivors. *Id.* ¶¶ 13, 20-22. O'Hara-Rusckowski allegedly helped Avodah secure $500,000 in donations from the Order of Malta, assisted in administering those funds, and arranged an additional $250,000 donation from an affiliated foundation, over which she and the Order of Malta retained control. *Id.* ¶¶ 24, 27-29.

Then, on November 7, 2022, at a meeting at the Lowell Home attended by O'Hara-Rusckowski, her husband, "unannounced members of Malta," and other third parties, O'Hara-Rusckowski allegedly told Fitzpatrick and an Avodah employee that they could not leave until they agreed to transfer Avodah's contractual rights in the Lowell Home to O'Hara-Rusckowski, return unused donated funds to the Order of Malta, and place the resident religious sisters under O'Hara-Rusckowski's management. *Id.* ¶¶ 41-43. As alleged, Avodah and Fitzpatrick complied, *id.* ¶¶ 44-45, and O'Hara-Rusckowski converted the Lowell Home into "The O'Connell House," named herself its founder, and took credit for the Sister Care model, supposedly to bolster her reputation, her nonprofit work, and GSO's commercial success, *id.* ¶¶ 39-40, 46-54.

The Colorado Amended Complaint further alleges that O'Hara-Rusckowski "initiated a campaign to tarnish the reputation and public standing of Avodah and Fitzpatrick" through knowingly false statements to "influential partners and donors in the faith-based and charitable communities." *Id.* ¶ 55. In winter 2023, O'Hara-Rusckowski allegedly told representatives of the Archdiocese of Denver that Avodah had "misused" grant funding and "failed to account for grant

money in the amount of $130,000," *id.* ¶ 57; told Kristen Meyer, an influential Catholic leader, that Fitzpatrick had "scammed our good friends out of 500k and is ironically and sadly trafficking religious sisters," *id.* ¶ 63; texted a network of prospective Avodah donors that Fitzpatrick was "more demon than friend," *id.* ¶ 64; and, in spring 2023, told a prominent figure in the anti-trafficking field that the Avodah and Fitzpatrick had "misappropriated funds and were labor trafficking religious sisters," *id.* ¶ 65. These statements allegedly caused the Archdiocese of Denver to disavow Avodah as a Catholic organization, induced religious sister organizations to terminate their contracts with Avodah, and cost the Avodah Plaintiffs millions of dollars in withdrawn donations. *Id.* ¶¶ 60-62, 66-68. Based on these allegations, the Colorado Amended Complaint asserts causes of action for defamation of both Avodah and Fitzpatrick, intentional interference with contract, intentional interference with prospective business relations, and extreme and outrageous conduct. *Id.* ¶¶ 76-155.

The Colorado Litigation has since been narrowed but remains far from resolution. On June 13, 2025, the Honorable Nina Y. Wang granted in part and denied in part O'Hara-Rusckowski's motion to dismiss, dismissing without prejudice the Avodah Plaintiffs' intentional interference claims but allowing the defamation and extreme and outrageous conduct claims to proceed. D. Colo. Case, Dkt. 114. Then, on July 31, 2025, O'Hara-Rusckowski answered and asserted affirmative defenses and counterclaims against the Avodah Plaintiffs (the "Colorado Answer"). D. Colo. Case, Dkt. 122 ("D. Colo. Answer"); *accord* Mosley Decl., Exh. C. As relevant here, O'Hara-Rusckowski's Seventh Affirmative Defense states:

> Upon information and belief, Plaintiffs' claims are barred because they have been released in accordance with the terms of the confidential settlement agreement between Plaintiffs and former Defendants [the Malta Defendants]. . . . At all relevant times, and as alleged in the Complaint, Ms. O'Hara-Rusckowski served as a member of the Board of Councillors of Malta, a Delegate and Special Advisor on Human Trafficking to the Ambassador for the Order of Malta at the United Nations, and Board Member of Malteser International, . . . and she engaged in all of the

> conduct alleged in the Complaint in her official capacity in these roles. Upon information and belief, the Confidential Settlement Agreement includes a release of all members of boards of directors and persons otherwise affiliated with the former Order of Malta defendants. Therefore, Plaintiffs released their claims against Ms. O'Hara-Rusckowski under the Confidential Settlement Agreement.

D. Colo. Answer at 26-27 ¶ 7.

Since the filing of the Colorado Answer, the Colorado Litigation has continued apace. On May 15, 2026, Judge Wang dismissed O'Hara-Rusckowski's abuse of process counterclaim without prejudice and denied the Avodah Plaintiffs leave to file a second amended complaint. D. Colo. Case, Dkt. 145. Under the latest scheduling order, discovery in the Colorado Litigation is set to conclude on December 15, 2026, and post-discovery motions are to be filed by January 29, 2027. D. Colo. Case, Dkt. 152.

Since the Malta Defendants' dismissal, Homeland has continued to defend O'Hara-Rusckowski in the Colorado Litigation. Deft. 56.1 Stmt. ¶ 23. But on November 13, 2024, Homeland sent O'Hara-Rusckowski a reservation of rights, asserting its right to file a declaratory judgment action seeking a determination that it has no duty to defend her and, in the event of such a determination, recoup the amounts it has paid toward her defense. Dkt. 40 ("Am. Compl.") ¶¶ 63, 67; Dkt. 40-5 (letter, dated November 13, 2024, on behalf of Homeland to O'Hara Rusckowski explaining that Homeland "is continuing to provide coverage for this matter under the Directors, Officers & Organization Liability Coverage Section of the Policy, subject to a reservation of rights"); *see* Deft. 56.1 Stmt. ¶ 23 ("Homeland currently is defending O'Hara Rusckowski against the First Amended Complaint subject to a reservation of rights.").

**B. This Litigation**

On January 29, 2025, Homeland filed this action seeking a declaration that it has no duty to defend or indemnify O'Hara-Rusckowski in connection with the Colorado Litigation. Dkt. 1. Then, on May 30, 2025, O'Hara-Rusckowski moved to dismiss Homeland's complaint or, in the

alternative, to stay the case pending resolution of the Colorado Litigation. Dkts. 27-29. But following a conference on December 18, 2025, the Court denied O'Hara-Rusckowski's motion to dismiss without prejudice, granted Homeland leave to amend its complaint, and directed the parties, in the event that O'Hara-Rusckowski answered, to propose a phased discovery schedule with the first phase "focus[ed] exclusively on whether Defendant is asserting in the Colorado litigation that she acted in her capacity as an employee." Dkt. 39.

Homeland filed its Amended Complaint on January 9, 2026, asserting four causes of action. Dkt. 40. The first cause of action seeks a declaration that Homeland owes no duty to defend or indemnify because the Colorado Amended Complaint alleges that O'Hara-Rusckowski acted in her personal capacity and in her capacity with GSO, such that it alleges no "Wrongful Act" committed in an insured capacity. Am. Compl. ¶¶ 42-49. The second cause of action seeks the same declaration on the ground that the alleged acts fall within the Policy's exclusion of coverage for any claim "involving any Wrongful Act of any Insured Person serving in any capacity, other than as an Executive or Employee or in an Outside Capacity." *Id.* ¶¶ 50-57. The third cause of action seeks a declaration that, in the event that the Colorado Litigation establishes that O'Hara-Rusckowski gained a profit to which she was not entitled or committed a deliberately fraudulent or dishonest act, the Policy's Exclusion K[3] precludes coverage and permits Homeland to recoup its defense

---

[3] Section III(K) of the Policy's "Directors, Officers & Organization Liability Coverage Section" provides an exclusion for loss from any claim:

> made against any Insured based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:
>
> > (1) such Insured having gained any profit, remuneration or advantage to which such Insured is not legally entitled; or
> >
> > (2) the committing of any deliberately fraudulent or dishonest act or omission, or any willful violation of any statute, rule or law, by such Insured;
>
> provided, that this EXCLUSION (K) shall not apply unless the gaining by such Insured of such profit, remuneration or advantage to which such Insured is not

payments. *Id.* ¶¶ 58-65. The fourth cause of action seeks recoupment of all defense costs in the event the Court declares that Homeland has no duty to defend. *Id.* ¶¶ 66-69.

At a February 19, 2026 conference, the Court confirmed that Homeland possessed the Settlement Agreement in the Colorado Litigation and directed the parties to file motions for summary judgment "on the issue of whether the scope of employment question will be litigated in both this case and the Colorado [L]itigation." Minute Entry, Feb. 20, 2026. On March 23, 2026, O'Hara-Rusckowski moved for partial summary judgment on Homeland's first and second causes of action or, in the alternative, to stay this action pending resolution of the Colorado Litigation. Dkts. 50, 51 ("Deft. Motion"), 52-55. Then, on April 13, 2026, Homeland opposed O'Hara-Rusckowski's motion and cross-moved for partial summary judgment on the issues of whether it has a duty to defend and a duty to indemnify. Dkts. 60, 61 ("Pl. Motion"), 62. O'Hara-Rusckowski submitted materials in opposition to Homeland's motion and in support of her motion on May 11, 2026, Dkts. 67 ("Deft. Reply"), 68, and Homeland submitted a reply in support of its cross-motion on May 27, 2026, Dkt. 71 ("Pl. Reply").[4]

## II. Legal Standard

### A. Summary Judgment

A court grants summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

> legally entitled, or the deliberately fraudulent or dishonest act or omission or willful violation of statute, rule or law, has been established by a final and non-appealable adjudication in any judicial or administrative proceeding other than an action or proceeding commenced by the Underwriter to determine coverage under this Policy . . . .

Policy at 36.

[4] O'Hara-Rusckowski has requested oral argument on her motion for partial summary judgment, *see* Dkt. 69, but because this Opinion and Order decides that motion without the need for oral argument, her request is denied as moot.

56(a). In such cases, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). By contrast, a "genuine dispute" exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and such a dispute is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court therefore "resolve[s] all ambiguities and draw[s] all reasonable inferences in favor of the nonmoving party," *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016), but a non-movant "may not rely on conclusory allegations or unsubstantiated speculation," *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted), and "[t]he mere existence of a scintilla of evidence" in its favor is insufficient, *Anderson*, 477 U.S. at 252.

When, as here, parties cross-move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together." *ExteNet Sys., Inc. v. Vill. of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019). The filing of cross-motions does not mean that one side or the other is necessarily entitled to summary judgment. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

**B. Duties to Defend and Indemnify**

An insurer's duty to defend its insured and its duty to indemnify its insured are "distinct" obligations. *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014).[5]

[5] The parties' briefs assume that New York law governs the Policy, *see, e.g.*, Deft. Motion at 9-10; Pl. Motion at 7-8, and "such implied consent . . . is sufficient to establish choice of law,"

Starting with the latter, the duty to indemnify is an insurer's promise to pay a covered judgment or settlement, and it "is determined by the actual basis for the insured's liability to a third person." *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985). As such, the duty to indemnify is "triggered by a determination of the insured's liability to the third party." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 89 (2d Cir. 2023).

By contrast, the duty to defend "is broader than [the insurer's] obligation to indemnify." *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984); *see also Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006) (describing the duty to defend as "exceedingly broad" (internal quotation marks omitted)). It is "triggered by the third party's filing suit against the insured," *Admiral Ins.*, 57 F.4th at 89, and it attaches "whenever the four corners of the complaint suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage," *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 609 N.E.2d 506, 509 (N.Y. 1993). An insurer therefore must defend so long as the allegations "arguably arise from covered events," *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 690 N.E.2d 866, 869 (N.Y. 1997), and the duty "remains 'even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered,'" *Cook*, 850 N.E.2d at 1155 (internal quotation marks omitted). When the insurer has promised to defend even claims that are "groundless, false or fraudulent," the duty to defend functions as a form of "litigation insurance," as compared to the liability coverage that the duty to indemnify provides. *Seaboard*, 476 N.E.2d at 274-75 (internal quotation marks omitted); *see also* Policy at 19 (providing a duty to defend a claim even if the allegations "are groundless, false, or fraudulent").

---

*Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation marks omitted).

Since the duty to defend is broader than the duty to indemnify, an insurer that owes no duty to defend a particular action necessarily owes no duty to indemnify an insured for that action. *See EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990). But the converse is not true: an insurer may owe a defense and, depending on the facts ultimately established in the underlying action, nonetheless owe no indemnity. *See Seaboard*, 476 N.E.2d at 275.

**C. Declaratory Judgment Act**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act thus "creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy." *Admiral Ins.*, 57 F.4th at 92 (internal quotation marks omitted).

Important for present purposes, the Declaratory Judgment Act provides only that a court "may" declare the parties' rights, "not that [it] must so declare." *Id.* at 96. The Supreme Court has thus read the Act to confer on district courts "unique and substantial discretion in deciding whether to declare the rights of litigants," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), such that, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration," *id.* at 288. *See also Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) ("Courts have consistently interpreted [the Act's] permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear.").

The Second Circuit has held that a district court's discretion to issue a declaratory judgment is guided by "an open-ended, multi-factor balancing test in which no one factor necessarily

mandates the exercise of jurisdiction." *Admiral Ins.*, 57 F.4th at 100 n.10 (internal quotation marks omitted). The relevant considerations include (1) "whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether [such] a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy"; and (6) "whether concerns for 'judicial efficiency' and 'judicial economy' favor declining to exercise jurisdiction." *Id.* at 99-100 (citations omitted). These factors are themselves "non-exhaustive," so a district court has "wide latitude to address other factors as relevant to the ultimate question" of whether, in a particular case, the usual rule of adjudication should "yield[] to considerations of practicality and wise judicial administration." *Id.* at 100 (internal quotation marks omitted).

**D. Standing and Ripeness**

Article III of the Constitution limits the federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The doctrine of standing, which is an "essential and unchanging part" of that limitation, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), requires a plaintiff to show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

A corollary of the standing doctrine is the requirement of ripeness. Stated simply, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation

marks omitted); *see also Trump v. New York*, 592 U.S. 125, 133 (2020) ("[A]ny prediction about future injury [is] just that—a prediction."). So where, as here, a plaintiff seeks a declaration of their rights, the need for such relief must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted).

## III. Discussion

### A. Duty to Defend

In order to issue a declaratory judgment as to Homeland's duty to defend, this Court would have to decide the question of whether O'Hara-Rusckowski was acting in her official capacity as an Order of Malta board member with respect to the conduct which is the subject of the Colorado Litigation. After all, Homeland's first cause of action asserts that the Colorado Litigation does not concern a "Wrongful Act" under the Policy due to the fact that O'Hara-Rusckowski acted "in her personal capacity and in her capacity with [GSO]." Am. Compl. ¶¶ 44-48. Similarly, Homeland's second cause of action invokes the Policy's exclusion for claims involving "any Insured Person serving in any capacity, other than as an Executive or Employee or in an Outside Capacity." *Id.* ¶¶ 52-56; *see* Policy at 36.

Issuing a declaration regarding whether O'Hara-Rusckowski was acting in her official capacity would, however, require this Court to weigh in on an issue likely to be litigated in the Colorado Litigation. Indeed, O'Hara-Rusckowski's Seventh Affirmative Defense in the Colorado Litigation asserts that she "engaged in all of the conduct alleged in the Complaint in her official capacity" as an Order of Malta board member, and that the Settlement Agreement's release of the Order of Malta's "board members" therefore bars the Avodah Plaintiffs' claims against her.

Colorado Answer at 26-27 ¶ 7; *see* Settlement Agreement ¶ 1. This defense, if established, may extinguish O'Hara-Rusckowski's liability in the Colorado Litigation.[6]

Given this overlap, the Court declines to issue any declaratory judgment that touches upon the capacity in which O'Hara-Rusckowski acted. *See Admiral Ins.*, 57 F.4th at 99-100 (instructing district courts to consider, before issuing a declaratory judgment, the values of "judicial efficiency" and "judicial economy," as well as "whether there is a better or more effective remedy" available (internal quotation marks omitted)). The District of Colorado has been presiding over the Avodah Plaintiffs' claims for over two and a half years, and discovery in that case is scheduled to conclude in December of this year. D. Colo. Case, Dkts. 114, 145, 152. It would therefore be inefficient for this Court to decide the issue first, only to risk giving rise to inconsistent determinations. Faced with similar circumstances, courts in this District regularly decline to issue duty-to-defend declarations. *See, e.g.*, *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 518 (S.D.N.Y. 2018) (declining to declare whether a duty to defend existed where "the risk of duplicative or contradictory fact finding between this action and [the underlying action] on certain key issues counsels in favor of abstaining"); *Lafarge Can. Inc. v. Am. Home Assurance Co.*, No. 15 Civ. 8957 (RA), 2018 WL 1634135, at *9-10 (S.D.N.Y. Mar. 31, 2018) (declining to decide whether an intentional-conduct exclusion defeated the duty to defend because the underlying courts had "yet to engage in such characterizations" of the insured's conduct).

[6] To be sure, the District of Colorado ultimately may not reach the capacity question. For example, it might conclude that the Settlement Agreement's reservation of claims against O'Hara-Rusckowski "individually," Settlement Agreement ¶ 2, preserved all claims against her regardless of the capacity in which she acted. *See* Deft. Motion at 5-6 (describing this reading). But the mere possibility that the question may go undecided in Colorado does not alter the Court's analysis. *See Am. Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 748 F.2d 760, 766 (2d Cir. 1984) (affirming a district court's denial of a declaratory judgment, explaining that "the parties have made no showing that the issues *cannot* be raised, but only suggest the possibility that they *may not* be" (emphasis added)).

Homeland nonetheless urges the Court to issue a duty-to-defend declaration for two reasons. First, Homeland contends the Colorado Amended Complaint, which names O'Hara-Rusckowski as "an individual," alleges that she founded and profits from GSO, and asserts that she acted for her own "personal and business" benefit, Pl. Motion at 7-9 (citing D. Colo. Am. Compl. ¶¶ 1, 3, 7, 35-40, 138, 145), cannot possibly be read as suggesting conduct which occurred in an insured capacity. The Court disagrees. The Colorado Amended Complaint also alleges that, "[d]uring the relevant times giving rise to this action," O'Hara-Rusckowski served on the Order of Malta's Board of Councillors and in two other Order of Malta roles, D. Colo. Am. Compl. ¶ 6; that she secured and helped administer $500,000 in Order of Malta donations to Avodah, *id.* ¶¶ 24, 27; and that the November 2022 confrontation at the Lowell Home, which precipitated the alleged defamation campaign, was attended by "unannounced members of Malta" and concluded when the Avodah Plaintiffs agreed to return unused funds "to Malta," *id.* ¶¶ 42-43. As a result, from the allegations in the Colorado Litigation, it appears to be very much an open question whether O'Hara-Rusckowski acted in an official capacity.

Second, Homeland argues that there are only "two potential resolutions" of the Colorado Litigation: either O'Hara-Rusckowski proves that she acted as an Order of Malta board member, in which case she faces no liability due to the Settlement Agreement, or she fails to prove she acted in an official capacity, in which case she is not covered by the Policy. Pl. Motion at 9-10; Pl. Reply at 1-2, 7. The problem with this argument is that if O'Hara-Rusckowski truly acted in an official capacity (as she claims to have done), then Homeland owes her a duty to defend in the Colorado Litigation as she seeks to prove that the Settlement Agreement bars the Avodah Plaintiffs' claims. *See Cook*, 850 N.E.2d at 1155 (describing the duty to defend as "exceedingly broad" and explaining that it exists even when facts "indicate that the claim may be meritless" (internal quotation marks

omitted)); *Seaboard*, 476 N.E. 2d at 274-75 (explaining that the duty to defend extends to claims that are "groundless, false or fraudulent" (internal quotation marks omitted)).

The Court therefore declines to issue a declaratory judgment on the question of Homeland's duty to defend O'Hara-Rusckowski, as sought in the first and second causes of action.

**B. Duty to Indemnify**

As noted, the first and second causes of action also seek a declaration as to Homeland's duty to indemnify O'Hara-Rusckowski. Am. Compl. ¶¶ 42-57. The Court concludes that this question is not ripe for adjudication. Indeed, because the duty to indemnify "is determined by the actual basis for the insured's liability to a third person," *Servidone Constr. Corp.*, 477 N.E.2d at 444, and is "triggered by a determination of the insured's liability," *Admiral Ins.*, 57 F.4th at 89, a declaration regarding a duty to indemnify generally cannot be issued until the underlying action has concluded. *See Pac. Emps. Ins. Co. v. Saint Francis Care Inc.*, 729 F. App'x 129, 130 (2d Cir. 2018) (summary order) ("[I]t is often premature to issue a declaratory judgment as to the duty to indemnify before the basis for liability is established.").

Notwithstanding this general rule, Homeland reiterates that there are only "two potential resolutions" of the Colorado Litigation, Pl. Motion at 9—a judgment in favor of O'Hara-Rusckowski based on the Settlement Agreement, or a judgment against her based on the fact that she did not act in an official capacity, in which case she also would not be covered under the Policy. But although these may be the most likely outcomes, they are not the only possibilities. For example, it is conceivable that the District of Colorado could read the Settlement Agreement's reservation of claims against O'Hara-Rusckowski "individually" as preserving all claims against her regardless of the capacity in which she acted, Settlement Agreement ¶ 2, and a factfinder could then determine that O'Hara-Rusckowski made some or all of the statements at issue in her official

capacity as an Order of Malta board member. *See* Deft. Reply at 4. In that event, O'Hara-Rusckowski would face liability, yet still be covered by the Policy.

Homeland dismisses this sort of scenario as "wholly illogical," Pl. Motion at 2, but the fact that it cannot be ruled out underscores that Homeland's indemnification claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (internal quotation marks omitted). At this point in time, any hypothetical possibility regarding indemnification is simply not "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (internal quotation marks omitted).

The Court therefore dismisses Homeland's claims insofar as they seek a declaratory judgment on the issue of Homeland's duty to indemnify O'Hara Rusckowski.

**IV. Conclusion**

For the above reasons, the Court, in the exercise of its discretion under the Declaratory Judgment Act, declines to issue a declaration as to Homeland's duty to defend O'Hara-Rusckowski, and further concludes that Homeland's request for a declaration that it has no duty to indemnify her is not ripe.[7] The Court therefore grants O'Hara-Rusckowski's motion for partial summary judgment, denies Homeland's cross-motion, and dismisses without prejudice the Amended Complaint's first and second causes of action.

[7] After a court exercises its discretion to decline to issue a declaratory judgment, staying the case may be preferable to dismissal if it allows the action to resume at a later point without risking that the plaintiff's action becomes time-barred. *See Wilton*, 515 U.S. at 288 n.2. No risk of a time-bar exists here, however, and a stay would needlessly require the parties and the Court to monitor the Colorado Litigation for a year or more only to revive claims that Homeland could simply reassert in a separate proceeding. *See Dow Jones & Co.*, 346 F.3d at 360 (affirming dismissal of a declaratory judgment action on discretionary grounds). The Court therefore dismisses without prejudice the first and second causes of action rather than enter a stay.

Counsel for all parties are ordered to appear before the undersigned for a conference to discuss next steps in this case, including how Homeland's remaining claims are impacted by this Opinion and Order, on September 14, 2026, at 10:00 a.m. At the scheduled time, counsel should call (855) 244-8681, access code 2302 755 2307.

The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 50, 60, and 69.

SO ORDERED.

Dated: September 4, 2026
New York, New York

JOHN P. CRONAN
United States District Judge